The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Margaret Morgan Holmes and the assignments of error. Both parties waived oral arguments before the Full Commission. The appealing party has not shown good ground to receive further evidence or to amend the holding of the prior Opinion and Award. Accordingly, the Full Commission affirms the Deputy Commissioners decision and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. EBI Companies is the carrier on the risk for this claim.
2. Defendant-employer regularly employs three or more employees and is bound by the provisions of the North Carolina Workers Compensation Act.
3. The Industrial Commission has jurisdiction over the parties and all parties have been properly named in this action.
4. Plaintiff was employed by defendant-employer on 21 August 1997.
5. On 21 August 1997, plaintiff suffered an injury to her back arising out of and in the course of her employment with defendant-employer as a direct result of a specific traumatic incident of the work assigned.
6. Plaintiffs time out of work is limited to 10 February 1998 to 20 July 1998.
 * * * * * * * * * * *
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff, age 38 at the time of the hearing before the Deputy Commissioner, works as a nursing assistant for defendant-employer.
2. Plaintiff has an unusual degenerative or genetic condition which has been building over years and has caused calcification or ossification of the posterior longitudinal ligament of her spinal cord from C4 through C7 vertebrae. This condition pre-dated her 21 August 1997 injury at work. As testified by Dr. Charles Branch, a neurosurgeon at Wake Forest University Baptist Medical Center, the condition more than likely would have continued to worsen over time with or without a traumatic cause of symptoms. Any routine act of living, such as turning her neck wrong, can at some point start a symptom "cascade which would ultimately lead to surgical treatment for someone with that condition.
3. On 13 May 1997, three months before the incident at issue in this case, plaintiff saw Dr. Mahmoud K. Atieh, an internist, complaining of pain to her head, neck and shoulder on the left side for the past three weeks. Dr. Atieh gave plaintiff an injection of pain medication and a prescription for pain medication and a muscle relaxant. He ordered x-rays of the cervical spine which showed degenerative changes at C4-C5. She returned to his office on 20 May 1997 again complaining of neck and left shoulder pain. Dr. Atieh recommended physical therapy and an MRI. Plaintiff did not follow either of these recommendations, nor did she return for her scheduled appointment on 29 May 1997.
4. On 21 August 1997, plaintiff was helping a co-worker move a patient at work for the defendant-employer when she suffered the stipulated injury to her back. She immediately reported the incident to the charge nurse and to her supervisor, Kim Winley, the director of nursing. Plaintiff told Ms. Winley that she was having pain in her chest and upper back. Plaintiff then completed an accident report also stating she felt pain in her chest and upper back. Plaintiff did not complain of left shoulder or arm pain at that time. Ms. Winley told plaintiff to go to the doctor.
5. Plaintiff reported that same day to Dr. Myung-Kil Jeon, her primary care physician. Plaintiff told Dr. Jeon that she was helping a co-worker at her job with the defendant-employer when she felt something pull in the middle to upper chest going into her back. Dr. Jeon ordered x-rays, which were normal, and gave plaintiff medication. She returned to work that day. She failed to return for her scheduled appointment on 24 August 1997. However, plaintiff did return to Dr. Jeon on 27 August 1997 to have her prescription for diet pills renewed. At that time, she did not complain of any pain resulting from the incident at work.
6. Plaintiff did not return to a doctor and missed only two days of work due to illness between August 1997 and December 1997. She never complained to Ms. Winley that she was unable to do her regular job due to any pain resulting from the August 1997 incident.
7. On 19 December 1997, plaintiff returned to Dr. Jeon for a female problem and also for complaints of low back and hip pain for the past three to four months. At that time, she did not complain of neck, shoulder or upper back pain. Dr. Jeon examined the plaintiffs entire back, which was within normal limits.
8. On 29 December 1997, plaintiff returned to Dr. Atieh for problems with her blood pressure. At that time, she made no complaints of neck or shoulder pain. However, plaintiff saw Dr. Atieh on 6 January 1998 with complaints of left shoulder pain for the past four days. She returned to him two days later with increasing left shoulder pain, and he wrote her a note for light duty.
9. Plaintiff presented the light duty note to Ms. Winley, but did not report to her that the pain had been ongoing since August 1997 or that it was related to the August 1997 incident.
10. By 22 January 1998, when plaintiff returned to Dr. Atieh, she was having numbness of her left thumb and tingling in her left arm. Dr. Atieh gave her a steroid injection. On 19 February 1998, he referred her to Dr. Ira Hardy, a neurosurgeon in Greenville.
11. When plaintiff first saw Dr. Hardy on 12 February 1998, she reported to him that she was lifting a patient six months prior at work when she developed acute pain in the left side of her chest, left neck and shoulder. She said that after being placed on medication by Dr. Atieh, her symptoms improved but never completely resolved. She further said that the pain started getting worse several months ago. Plaintiff did not report that she had been treated for neck and left shoulder pain in May of 1997. Dr. Hardy scheduled a myelogram and CT scan and took plaintiff out of work. Based upon the results of the tests, Dr. Hardy recommended surgery and referred plaintiff to Dr. Branch.
12. In April 1998, Dr. Branch performed a C5 and C6 carpectomy and spinal cord decompression and strut graft with anterior plating from C4 to C7. The surgery was successful, and on 6 July 1998, he released plaintiff to return to her normal duties as a nursing assistant. Plaintiff reached maximum medical improvement with a twenty-five percent (25%) permanent partial impairment to her back.
13. Plaintiff returned to her regular job with defendant-employer on 20 July 1998 earning more than her pre-injury wages.
14. Despite her immediate reports to her supervisor, the complaints set forth in the accident report completed on 21 August 1997, and her 21 August 1997 complaints to Dr. Jeon, plaintiff testified that she suffered pain in her left shoulder and neck in addition to the pain in her chest and back during the 21 August 1997 incident at work. In contrast to Dr. Atiehs notes and testimony regarding his May 1997 treatment of plaintiff, she testified at hearing that she had pain in her upper back in May 1997, but not in her left arm or chest, thus stating that the pain in May 1997 was different than was that for which she received surgery. Additionally, contrary to the testimony of Ms. Winley and the attendance reports received into evidence, plaintiff testified that she had pain from September through November 1997 and that she often left work early and missed work due to the pain. However, based upon the documentary evidence, including the accident report, attendance report and medical records, along with the credible testimony of Ms. Winley, Dr. Atieh and Dr. Jeon regarding her reports of pain, the undersigned does not find plaintiffs contradictory testimony as fact. Instead, the Full Commission finds that as a result of the 21 August 1997 incident, plaintiff suffered pain in her mid to upper chest going into her back, with no complaints of neck and left shoulder pain.
15. Dr. Branch did not have access to the plaintiffs medical records for treatment prior to her treatment with Dr. Hardy. Based solely upon the plaintiffs reports to Dr. Hardy and Dr. Branch that her pain began with the August 1997 injury, Dr. Branch opined that the August 1997 injury aggravated her pre-existing condition or made it symptomatic. However, after hearing the relevant facts, (that plaintiff was treated for left arm and neck pain in May 1997, that after the lifting incident in August 1997, she had pain in the mid to upper chest into the back with no complaints of neck pain, that she did not complain to her doctors of continuing problems, that she continued to perform her normal work duties, and that when she complained of left shoulder and neck pain in January 1998, she reported an onset of four days), Dr. Branch testified that he could not say to a reasonable degree of medical certainly that the August 1997 incident was the event which caused the need for her surgery.
16. Plaintiff failed to prove by the greater weight of the evidence that the 21 August 1997 specific traumatic incident caused or aggravated the back condition which necessitated her April 1998 surgery and resulting disability.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 21 August 1997, plaintiff sustained an injury to her back as a result of a specific traumatic incident of the assigned work with defendant-employer. G.S. 97-2(6). However, the 21 August 1997 incident is not causally related to the plaintiffs back condition which necessitated surgery and caused her disability. G.S. 97-2(9).
2. Plaintiff suffered no disability as a result of the 21 August 1997 incident and is thus entitled to no disability compensation. G.S. 97-2(9).
3. Plaintiff is entitled to medical compensation necessitated by the 21 August 1997 injury by accident, which is limited to her 21 August 1997 treatment by Dr. Jeon. G.S. 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay for the medical treatment received by plaintiff from Dr. Jeon on 21 August 1997.
2. Plaintiffs claim for medical compensation relating to her April 1998 surgery and for disability compensation from February to July of 1998 is hereby denied.
3. Defendants shall pay the costs.
 S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ____________________ RENÉE C. RIGGSBEE COMMISSIONER
S/ ____________________ THOMAS J. BOLCH COMMISSIONER